UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
EMERSON SIMON

              Plaintiff,

  against-

COVENANT HOUSE, NUPUR TALWAR
As Agent for COVERNANT HOUSE
---------------------------------------------------------

Index No.: 1-23-CV-1607

**COMPLAINT**
**Jury Trial**
**Demanded**

The Plaintiff by and through his attorneys Washington Law Firm P.C. Complaining about the defendant alleges as follows:

**PRELIMINARY STATEMENT**

This is an action for wrongful termination and discrimination. The Plaintiff is a black male who migrated to the United States from the South American, country of Guyana. The Plaintiff was hired by the defendant since 1997 as a payroll clerk. Plaintiff has worked for the defendant from 1997 up to 2022 when he was wrongfully terminated by the defendant without cause. In 2020 the defendant hired Nupur Talwar as the Senior Vice President of Human Capital Management. The Plaintiff was brought under the second maned defendant's management. Under Ms. Talwar management, the Plaintiff subjected to discrimination, harassment, mental and emotionally abuse. Ms. Talwar constantly made bias remarks that the defendant's tone was too loud and that he was intimidating and scary. She constantly reprimanded him and within six months under her short leadership she sent two warning letters to the Plaintiff. In her letter she claimed that the Plaintiff was incompetent and threatened to terminate his employment. Ms. Talwar has no male employee under her leadership at the time the Plaintiff was transferred under her. She constantly blamed the Plaintiff for incomplete task or task completed incorrectly by staff under her own leadership. After her first warning letter Mr. Talwar posted the Plaintiff's job as a vacancy.

Ms. Talwar created an environment that was so difficult to function that she constructively terminated the Plaintiff. The Plaintiff managed to continue his functions since he was working remotely. This however did not prevent Talwar from constantly harassing the Plaintiff to the point that where he began experiencing panic attacks and his health deteriorated. Prior to the defendant's

warning letters the Plaintiff has received all favorable reviews and was never provided with any warning letter and told that he was unprofessional under the leadership of his prior supervisor.

## JURISDICTION

This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 1981, and 29 U.S.C. § 201 *et seq.* The Court has supplemental jurisdiction over Plaintiff's New York State and New York City law claims under 28 U.S.C. § 1367(a).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

14. Plaintiff demands a trial by jury in this action.

## PARTIES

15. The plaintiff is a black 63-year-old male who was employed by Covenant House from October 17, 1997 to February 7, 2022. At the time he was hired the Plaintiff was properly qualified for the job he was hired for. He possessed two years of college credits; and possessed a certificate as a Certified payroll professional. The Plaintiff was hired as a payroll specialist. He worker from 1997 to 2005 as a payroll specialist. During that period, her was promoted from payroll specialist 1 to payroll specialist 2. The Plaintiff was promoted to payroll manager in 2008.

16. The first known defendant is a domestic not for profit corporation incorporated under the laws of the state of New York with corporate office located at 5 Penn Plaza New York, NY 10001, and its address for service of process located at 39th Floor, Worldwide Plaza, 825 Eighth Avenue, New York, NY, United States, 10019.

17. The second named defendant NUPUR TALWAR was hired by the first named defendant as head of the human capital department with office address located at 460 W 41st St, New York, NY 10036.

## AS TO FIRST CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT

18. Plaintiff was transferred from Finance department to Human Capital Management. In the Finance department he was placed under the management of Lenore Haas.

19. Mr. Talwar only has female employees under her leadership. She only employed one male employee who left only after a short four months of torment under Ms. Talwar.

20. Another employee was employed but also left the position for some of the same reasons the Plaintiff was terminated for.

21. When the Plaintiff was transferred to Mr. Talwar's department the Plaintiff worked in the office in person for a very short time with Ms. Talwar.

22. During the short period the parties worked together in the office the Plaintiff was saddled with the task of transitioning Ms. Talwar. During this period Ms. Talwar failed to find any issued with the Plaintiff or the quality of his work.

23. In 2020 the Plaintiff received a favorable review from Lenora Haas the VP. Mr. Talwar later requested that the review be rewritten to include unfavorable findings against the Plaintiff. Therefore, a second review was issued at the request of Ms. Talwar.

24. Ms. Talwar constantly emailed the Plaintiff with task outside of his scope of work and required that he answered numerous emails while completing all his daily payroll task without any assistance.

25. Ms. Talwar lacked the skills and capacity to perform the functions of her role and relied heavily on the Plaintiff for guidance.

26. When the plaintiff offered to correct Ms. Talwar on issues which she possessed no knowledge, she often became upset and attempted to punish the plaintiff by providing excessive work outside the scope of his employment.

27. Ms. Talwar failed to provide a job description or to provide a written scope of the nature of work she expected the plaintiff to perform.

28. Ms. Talwar went as far as to inform other employees that she despised the Plaintiff and instructed one employee to write a letter falsely claiming that the Plaintiff shout at her and disparaged her in the presence of others.

29. Ms. Talwar informed the employee that she disliked the Plaintiff and stated that she wishes he would leave the Covenant House and return to his home country.

30. The employee later quit her position because she informed the Plaintiff that she did not agree with Ms. Talwar's toxic, discriminatory practices and wanted no part in the company.

31. Ms. Talwar described the Plaintiff to other employees as big loud and obnoxious, and further stated that she could not "stand being around this loudmouth black man"

32. Although several employees made mistake processing payroll benefits, Ms. Talwar always found a way to blame the Plaintiff for all such errors and or mistake.

33. Prior to issuing her first warning letter to the Plaintiff, Ms. Talwar caused the plaintiff's position to be advertised.

34. Even after Ms. Talwar terminated the Plaintiff, she refused to provide him with any appropriate severance despite his length of service with the organization.

35. When other employees who worked for the defendant for only two years were terminated, Ms. Talwar provided those employees with at least one year worth of severance.

36. In the case of the plaintiff the defendants refused to adequately compensate him despite his wrongful termination. The defendant instead claimed that the organization was impoverish and unable to pay the Plaintiff at least one year's severance pay.

## AS TO SECOND CAUSE OF ACTION
### DISCRIMINATION BASED ON ETHNICITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

37. The Plaintiff repeat and reallege each and every allegation as if specifically, herein pleaded.

38. The Plaintiff was the only black male of Guyanese decent working under Ms. Talwar.

39. The Plaintiff was the constant target of Ms. Talwar's insults and discrimination. Ms. Talwar made discriminatory remarks about the Plaintiff to other employees during the very short period the parties worked together.

40. Not only was the Plaintiff the only black male in his department, but he was also the oldest person in his department.

41. The defendant wanted to terminate the Plaintiff because Ms. Talwar informed a former employee that she believed that the plaintiff was getting too old and was unable to function in his position because of his age.

42. Ms. Talwar. also informed a former employee that the sole reason for transferring the Plaintiff into her department was create reasons to terminate him and hire someone who was younger to perform the job.

43. On information and belief shortly after informed the former employee of her plans she took steps to implement them by first sending warning letters to the Plaintiff and then advertising his.

44. On information and belief, the Ms. Talwar made several offensive remarks regarding the Plaintiff's ethnicity and stated to the Plaintiff in a joking manner on one occasion that "Guyanese people are not fit to perform the duties of a payroll manager".

45. Ms. Talwar also asked the Plaintiff offensive questions about his country of origin and asked the Plaintiff more than once when he intended to return to his country to retire.

46. Ms. Talwar sent two letters to the Plaintiff and then terminated him in less than six months after moving him into her department.

47. After terminating the Plaintiff the defendant refused to properly compensate the Plaintiff although he had given 24 years of his life service the defendant often times having to work without taking his leaves because of the heavy responsibility entrusted onto him with very little or no leave.

48. One information and belief the defendant terminated the Plaintiff in violation of state and federal anti-discrimination laws.

49. Wherefore the plaintiff demand judgment against the defendant for discrimination against him based on his ethnicity in violation of Title VII of The Civil Rights Act Of 1964.

## AS TO THIRD CAUSE OF ACTION
DISCRIMINATION BASED ON AGE IN VIOLATION THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

50. The Plaintiff repeat and reallege each and every allegation as if specifically, herein pleaded.

51. At the time the Plaintiff was terminated he was well into his 60s and was told on several occasions by the defendant that he was becoming a bit too matured for his job.

52. After Ms. Talwar sent her first warning letter to the Defendant, she immediately advertised his job because she had no intentions of permitting the Plaintiff to continue his employment until retirement.

53. On one occasion when the Plaintiff made an error and paid out the CEO's income based on a fraudulent email the Plaintiff received, believing that such email was legitimate and acted on the instructions on that email, the defendant's agents became enraged and the Plaintiff was told that he had become too old for his job.

54. The defendant was determined to terminate the Plaintiff after this issue has occurred because the CEO's salary was issued based on a fraudulent email the Plaintiff received.

55. Although the CEO's income was paid out based a fraudulent email and the defendant's own failure to ensure the proper internet security measures were in place to protect employees from fraud, the defendant blamed the Plaintiff for this incident and set out to terminate his employment because the defendant claimed that the Plaintiff skills were declining due to his age.

56. On information and belief, the Plaintiff was duly informed by an employee who later left the organization that the defendant's agent wanted to transfer the Plaintiff under Ms. Talwar's department for the sole purpose of her terminating his employment.

57. On information and belief, the Ms. Talwar has emailed other individuals in the defendant's organization discussing the Plaintiff age is an issue and seeking the most appropriate way to get rid of the Plaintiff from his employment.

58. On information and belief Ms. Talwar was not concerned with the legalities of her actions and was more concerned with terminating the Plaintiff since she saw him as a major burden to the defendant organization.

59. On information and belief because of the Plaintiff's age Ms. Talwar demanded that he participated in numerous training coursed and demanded that he improve his skills although the Plaintiff was frequently seeking new ways of performing his job and was performing at the same level or better than younger employees.

60. On information and belief Ms. Talwar did not make any such demands on any of the younger staffs who worked under her.

61. In fact all of the younger staff worked under Ms. Talwar were able to work free of harassment discrimination or constant micromanagement because they did not fit the same profile as the Plaintiff.

62. The defendant, it's agents and employees discriminated against the Plaintiff based on his age in violation of the Age Discrimination in Employment Act of 1967.

63. Wherefore the Plaintiff demand judgment in excess of $1,000.000.00 for the defendant's willful violation of Federal Laws protecting employees against age discrimination.

## **CONCLUSION**

By reason of the aforesaid, the Plaintiff has been damaged in the sum of:

(1) $1,000,000.00 on his First Cause of Action;

(2) $1,000,000.00 on his Second Cause of Action;

(3) $1,000,000.00 on his Third Cause of Action;

(5) That plaintiff demands reasonable attorney fees and the costs for

**WHEREFORE,** plaintiff is asking the Court for a judgment and damages in the sum of $4,000,000.00 against the defendants, together with reasonable attorney fees with interest for the costs and disbursements of this action and for such other further relief as this Court seems just and proper.

Dated: Brooklyn, New York
March 1, 2023

_____
By: Shelton O Washington Esq
Washington Law Firm P.C.
455 Utica Avenue, Suite 2R
Brooklyn, NY 11203
Tel: (718) 877-3100
Fax: (855) 843-6236
Email: s.o.washington@wwinterlaw.com